BASF came up with a new way of doing things. Mr. Herman, do you admit that the prior teaches each of the limitations of the challenge claims of the 107, that is, your challenge is limited to motivation to combine and reasonable expectation of success? No, Your Honor. And that's based on the slurry-loaded wash coat limitation. Well you, in the blue brief at 29, you argue that the term slurry-coated wash coat imparts structural characteristics into the claim system. But you cited me to 755-56 JA and 1567-72. When I looked at them, those were attorney submissions rather than submitted evidence. What do you have that's not attorney argument? Sure, Your Honor. For the slurry-loaded wash coat, we have the Ferrato Declaration. Give me a cite. Because that citation was not helpful. It's Appendix 2403, Your Honor. And there, Dr. Ferrato, who's a witness for BASF, explains about the language in the claims and how the patent uses slurry over 20 times, and what a person with an air school in the Army would understand slurry-loaded wash coat to mean. That's at 2406. I haven't underlined it. 2403, Your Honor. And Dr. Blakeman was on the other side, right? That's correct. And he disagrees with your expert? He does, Your Honor. But if you look at the history of the— Can I just back up one point? You have a claim construction hurdle to mount here, right? Because if you don't win on the claim construction, then there's no argument on the 103. No, that's not correct, Your Honor. We have two separate arguments. We have a claim construction argument which says that the slurry-loaded wash coat is not disclosed in ONO, and therefore— Well, that's right. Then ONO's gone, then there's no— Then all the elements aren't there. Then we have a secondary argument that does not rely on the claim construction, that there is not substantial evidence to combine ONO with either Sparinello or Chamberson— On the claim construction of the board. Having nothing to do with the claim construction, Your Honor. Bait, ONO— and I'm happy to go to this, but I don't want to leave the slurry-loaded wash coat issue. But ONO— Well, the reason why I raised it is your adversary read your blue brief to say that your 103 argument hinged on you prevailing on your claim construction argument. I see you rejecting that in your gray brief. I don't believe that JMI, Johnson Matthey, is arguing that if we lose the claim construction argument, we lose our entire arguments about patentability, because there's a complete separate question, and both of us briefed it in detail, as to whether one of ordinary skill in the art would combine ONO with the secondary references. That was my first question to you. So with respect to ONO, Your Honor, and I think it's really important for the panel to look at— Well, look, why all your arguments on that seem to me to be simply to request us to re-weigh the evidence. Absolutely not, Your Honor, and I'll tell you why. Because if you look, and this came even more clear in the briefs, if you go to ONO, page 28, which is appendix 1951, and this is where JMI relies almost entirely on this supposed alternative that not only does ONO describe oxidation catalysts, but ONO also describes in the alternative this SCR catalyst reduction. And Your Honor— My expert testifies why a person of skill in the art wouldn't have limited the teaching of Speranello to flow-through substrates. And he says, a person of skill, I'm quoting, looking to load an SCR catalyst on a wall flow filter would have looked to SCR catalysts used in any substrate, even if the catalyst was used on a flow-through substrate such as Speranello, because the functional requirement is the same. Okay. So you cite neat evidence the other way. Correct, but Your Honor— That's a weighing of evidence. Well, no, because if you look at ONO, and they've taken this position in the brief, they're saying that it does not disclose oxidation and the SCR. It is an alternative. And that's why I'd like you to please look with me at ONO. In the section they rely on, this is on page 28 of ONO, which is appendix 1951, it says the DPF itself would have had the function of only accumulating particles, but when it carries a catalyst, the hydrocarbon and carbon monoxide in the exhaust gas could be oxidized. And that is what ONO is describing throughout the entire thing. And then the next sentence— And then the next sentence— Well, look what it says, Your Honor. It says, also, even in an oxidized atmosphere such as the diesel exhaust gas, if it carried a NOx-selective reduction catalyst— So there's two things to look at there, Your Honor. Also, so it's saying it is oxidizing. And then it says, since if it carried a NOx. So it doesn't even tell you how the heck you would do this or that you actually are doing it. And the reason that no one from JMI, there is no evidence that says that you can actually do both of these at the same time, because you can't. Because they have this, these are competing chemical reactions, okay? So when you look at what the oxidation reaction is going to consume ammonia, and the reduction of the NOx is going, it requires ammonia using these SCR catalysts. So the only other thing they can point to, Your Honor, in ONO, there's two things. There's the abstract, which is on 1924, which all it says is that oxidation of CO and HC and reduction of nitrogen oxide, NOx, contained in exhaust gas. And they put a lot of credence in that, but it never tells you where to do it except for what I just read. The only other thing they point to, Your Honor, is a laundry list of catalysts that have in them vanadium and a couple other ones, but there's nothing in that section that says that they are going to act as SCR catalysts. There's nothing in any of this that says that they are going to act to reduce the NOx. There's nothing in ONO that says you're going to do this. So the entire decision of the Court is premised on a misreading of ONO that we believe that JMI, some of the witnesses, really took liberties. I'm going to give you an example, if you'll let me. While you're looking, in the blue brief of 47, you argue Tennyson teaches away from arrangement of the SCR catalyst by teaching the catalyst is positioned upstream of the filter. It certainly teaches some advantages of its arrangement, but how is that necessarily discouraging another solution? Well, Your Honor, if you look at ONO, when ONO actually is doing the arrangement, and you look at the BASF patents, they have the oxidation first, but then they have the ammonia put in, and then they're doing the removal of soot. So you're basically rewriting, you're redoing the ONO invention, which says you're going to do oxidation, and then you're taking JMI's argument, which would say you can do oxidation or you can do SCR, and you have to buy that in order to buy that any combination would actually disclose what's in the 597. If you agree with us, with BASF, that ONO doesn't disclose an alternative, ONO discloses an oxidation reaction with a throwaway ephemeral or vague passage about nitrous oxide reduction without anything to do with it. Now, Your Honor, I wanted to point you to Walker, which is Appendix 2846, and if you look at Paragraph 8, Mr. Walker, who is JMI's witness, says, although ONO does not expressly indicate the amount of SCR catalyst, ONO makes clear that the catalyst composition should be provided so as to not clog the pores in the walls of the monolith. And, Your Honor, it quotes, it cites to ONO, page 13, lines 2 to 17. Are you appealing slurry-coated wash coat in 107 and wash coat in 597 both? Yes, Your Honor. So what is the standard of review you think applies to us? Because in at least the 597, I see an extraordinary amount of expert testimony, which I think the lower court relied on. So do you understand that that morphs this into a question of substantial evidence for us instead of de novo? The case law seems fairly clear that it is a de novo question, but if it relies on underlying questions of fact, that those would be considered by the substantial evidence standard. It's fair to say that it's fairly clear. Yeah, thank you. But, Your Honor, I would suggest that our, particularly with respect to the 107, the arguments were largely based on the intrinsic evidence with confirmatory extrinsic evidence  I understand. I found this point to be a little confusing in the briefs. So there is no doubt in my mind that in the 597 discussion, the district court very clearly analyzed and relied on the expert testimony, which would cause that to be something we have to review for substantial evidence. In the 107 patent, while there was extrinsic evidence, the analysis seems more focused or tailored to the intrinsic evidence, yet you kind of want these terms to have the same meaning, right? I'm not positive I understand the nature of exactly what our review should be. Well, we would prefer that you... And I mean the board, not the district court, by the way. Yes, I was going to say I wish it was the district court, not the board. We would prefer that you look then at the 107 and look at Claim 1 and the slurry-loaded wash code there. Well, you'd prefer I do that because you think I have de novo review there, but then what do I do with the 597 patent? Say, oh, well, they have to be given the same meeting and I'm going to choose the one that's de novo so I can figure it out myself? Well, Your Honor, my understanding from reading the amended claims in the 597 is that it just claimed a wash code, whereas in the... But you've argued the meaning is the same. I know we did, but when I was reviewing this last night, I noticed that the 107, it's the slurry-loaded wash code, and in fact, importantly, when the claim was first amended, it was amended to wash code and the examiner rejected it, and then it was amended again and it included the term slurry-loaded. Does that mean that you now hold the view that these limitations could very well have different constructions or should have different constructions? I'm not saying that, Your Honor, but I'm saying if you look at the way these came up, the examiner allowed our claims in the 107 patent and the examiner did not allow the claims in the 597, so they did come up in a different form. The 107 got amended. They both were amended, Your Honor, but the 107 patent was originally accepted by the examiner and then JMI appealed. The 597 was not... I assume it comes in time after the 107? Correct. And the same examiner? I don't know the answer to that, Your Honor. I don't think it was the same examiner. I don't know the answer. But if I could go back to the point about ONO and what I read from Walker on page... You're into your rebuttal time. If you want to use it, that's your prerogative. Thank you, Your Honor. This is important. I do want to say it says they refer to ONO and they refer to page 13 lines 2 to 17 as not expressly indicating the amount of SCR catalyst. If you read Appendix 1936, that section of ONO, the last sentences say, consequently, oxidation of the CO and HC in the exhaust gas can be facilitated. ONO does not disclose, and this is really dispositive to this whole thing, and it doesn't affect Judge Moore's question about slurry-laden washcoat. ONO does not disclose the ability to do oxidation and, alternatively, the ability to do NOx reduction, and that is fatal to the combination of ONO and the secondary references. And I'll save the rest of my time for rebuttal, please. Let's hear from Mr. McCann. May it please the Court. I guess I'll begin by saying I do believe that this case is involving a reweighing of evidence. Obviously, this, of course, is an issue of law supported by fact, and the Board did a careful review of the facts of this case, weighed the competing views of the experts inside it with Johnson and Mathey. And I think what those facts show are as follows. First, with respect to the 107 patent in ONO, it discloses the wall flow filter. It discloses the use of the wall flow filter with an SCR catalyst to reduce NOx. It identifies some specific SCR catalysts, and they include copper and iron, and the expert testimony in the record was that copper and iron are very good SCR catalysts, but they're poor oxidation catalysts. It did not, of course, as we know, disclose metal-promoted zeolites, because if it did, we'd have an issue of anticipation here, but that was supplied by Speranello. And so the Board's conclusion, looking at all those facts, was that if the person of ordinary skill in the art— Conclusion based on expert testimony. It was, Your Honor. The person of ordinary skill in the art, being taught by ONO you can use an SCR catalyst on a wall flow filter and capture both particles and reduce NOx, would have asked herself, what are some SCR catalysts I can take advantage of? And from Speranello, would have learned that the metal-promoted zeolite catalyst is very good because of its hypothermal stability, its resistance to sulfur poisoning, et cetera. I guess I'll briefly address just some of the comments that Council made with respect to the 107 patent. The issue of whether ONO requires the oxidation catalyst, and if that's true, does that mean then that one could not put an SCR catalyst in with the oxidation catalyst? I thought the Board, Your Honor, summed that up pretty well. First, they did look to the testimony of Johnson Matthey's experts, and I think it was specifically Blakeman. And the Board said, you know, Blakeman says that reading ONO, a person of skill would understand, at least it suggests you could use the filter and the alternative either with the oxidation catalyst or with the SCR catalyst. The Board went on to say, the requirement issue, Your Honor, is if you look, it's mostly I think on Board appendix, it's page 22 of the appendix. And in that discussion, they cite the Blakeman, I think paragraphs 12 and 13 of his second declaration in the first re-exam. They also go on to say, gee, if the oxidation catalyst was actually required, wouldn't it be in the claims of ONO? And it's not. So I mean, I think that that is, I think, a good summary of the facts. It is supported by substantial evidence. And so the contest we're having today is really a re-weighing of those facts, and I believe then the appropriate thing for the Court to do is to affirm. I wasn't going to spend much time on the claim construction. I understood Your Honor's question about it. I have to tell you candidly, Your Honor, I didn't write the briefs. My law firm came in later. I understood our argument to be the Board had the claim construction right, but I don't recall us saying that the entire case turned on the claim construction. I think our view, maybe more fairly said, was even if you agree with their claim construction. Your brief says if we agree with the Board's claim construction, it moots their argument that ONO teaches away. Oh, on that specifically, yes, I agree. I do recall that. So the teaching— That's page 26. Yes, the teaching away issue, Your Honor, I think relates to this idea that ONO had problems washcoating in a wall flow filter and— Well, isn't that basically their art? I mean, ONO exists, right? And so they don't have to find a way to get ONO not in a combination? I think that's why a slurry-loaded washcoat was probably added to the claims and re-exam, Your Honor. Well, it sure looked to me like somebody saw ONO and thought they would then amend to slurry loaded, thinking that basically ONO isn't going to teach the kind of slurry loading they mean because they want a slurry loading that has some solids left in it. Solids left in it, how do you show a method of applying the slurry in ONO that will achieve that? That's what I thought their argument to be. I did, Your Honor. That's why it seemed to me to make sense when they led off in their blue brief by saying, you know, applying the correct construction of the term washcoat implies the applicability of the references considered by the board. It seemed to me that their argument really was based and hinged entirely on the claim construction. The claim construction, Your Honor, certainly would dispose of the issue of the teaching away. But I guess the point I was trying to make was even if you adopted their claim construction, it's not, it's not... You could then question whether or not there was any other basis on which you would reject ONO. Yes, Your Honor. And I think here what we're saying is that ONO... What do you understand to be their basis for rejecting ONO other than teach away? I don't think they have one. They do make the argument with respect to motivation to combine that on the difference between a wall flow filter and a... If it's taught away, then there's no motivation to combine. Yes. So I didn't understand their argument on ONO to be anything other than it teaches away. It teaches away because their definition, their preferred definition of slurry loaded delivers you a kind of a slurry. They can't get the job done the way ONO teaches. It's different methods of applying the stuff, right? And that's... Yes, Your Honor. But I think that I guess that even if that were the construction... So first, let me take one step back. I was thinking about if we have... And if it's true that the claim construction resolves the 103 issue, you don't have to go any further. I think you could take that position, Your Honor. But even if you were to adopt their construction, the slurry loaded... First, to take a step back, slurry loaded wash coat was, of course, added during the re-examination. And as a result, you can see this problem with it. The whole phrase does not even appear in the specification other than to the extent that the claim... Is the only board interpretation of slurry loaded wash coat on page 20 of the appendix? Is that where I should look? I believe that's correct, Your Honor. So do you believe that I review this construction de novo? Or is there some sort of evidentiary finding that you think requires substantial evidence deference? I think with respect to slurry loaded wash coat, that's de novo. There was a little bit of, I think, reference to the board to some extrinsic evidence in its construction there on page 20. Where? Can you pull it up and look at it and tell me? I guess I'm just trying to understand what my standard of review is. I think in that section on the construction... See, the first two sentences seem to be the entire construction, and there is no reference to anything in terms of any evidence at all. But then they say, nevertheless, and they go into whether or not, oh no, teaches away, and then they have... I agree with you, Your Honor. I was remembering that there was facts on the page, but I forgot that it... Yeah, but I think it's de novo. Like, I don't see any fact-finding, distinguishing between expert testimony on the construction at this point. Now, the 597 is a little different, because I think they actually do, on page 57, rely on expert testimony for the definition of wash coat. So that leaves me just a tiny bit confused about which one to evaluate and under which standard. Your Honor, I guess I certainly agree with you as to your understanding of the law, and I also think that the board's construction, it can be the same for both. I think what they were really saying was, look, what you're talking about as a result of this is catalytic material on the substrate. That's a wash coat. And I suppose for infringement of the 107 patent, you would have to show it was loaded by a slurry, and for infringement of the 597, you wouldn't have to show that. What's the difference between a slurry and a solution? A slurry... A solution, though, everything would be dissolved completely into the solution. It's like the difference between a Slurpee and Diet Coke, right? I think that's correct, Your Honor. A slurry... A slurry's thicker. Yes, the material is not dissolved. It is there. A suspension of particles in an aqueous solution. Yes, and it is the case that the... So can you have a thin slurry and a thick slurry? I think you could, and some of the expert testimony in this case was, on this issue of could you actually load a wall flow filter, did one know how to do it with a slurry? One thing the board pointed to, relying on Walker's declaration, was this Hashitomo reference that said, people know how to put slurries into wall flow filters. And Walker went on to say, and of course, you have to understand with a wall flow filter, you know, they're both these honeycomb substrates. It's just the wall flow filter's checkerboard plugged on one end. And that does make it a little bit different because the gas has to go through the channels. Obviously, for the other one, it could be no gas penetrating any channel. It would still work. So what Walker says is, or Blakeman, one of the two, says is, you would understand, though, that when you're loading a wall flow filter, because it has to do its job and allow the penetration, you would avoid clogging all the pores. And that's what Ono taught to do. He puts the alumina in. Yes, right. So what he experienced was a wash coat of alumina film caused, it was too thick and it caused clogging. And he says, OK, well, I'm going to put the alumina in first by growing it in situ. And then I will insert the catalyst, perhaps by incipient wetness, for example, which would be catalyst in an aqueous delivery vehicle. But you do agree that the slurry-loaded language does impart a structural limitation to the claim, don't you? I mean, you said one is slurry-loaded and the other is just a wash coat. And then I gave the example of the 7-Eleven slurpee, which I'm glad you know. So often, I give these examples and people have no idea what I'm talking about. The highlight of my news, Your Honor. Yesterday, I referenced Waterboy. OK, I know that reference, too, Your Honor. To complete dead silence. So this just means, Your Honor, that I'm not going to get the compliment of being a young attorney arguing unsuspecting. Well, you're younger than two of the three of us. I agree that a slurry is a slurry. And the claim requires that there be a slurry. So the wash coat has to be made by a slurry as opposed to an aqueous liquid type. Yes. Right? Yes. So there is some possible difference, but not relevant to this particular case. Not relevant to the determination, ultimately, of obviousness. Your Honor, I won't say, unless you have specific questions about the 597, I wasn't really going to say much. I thought the briefs joined the issue well. OK, thank you very much. Thank you, Your Honor. Sit down, young fella. Mr. Harmon, please proceed. Your Honor, a couple of things. First of all, Judge Klovenger, you are correct on our claim construction position. And actually articulated it better than I think we did in our briefs. But to be very clear, the claim construction position is separate and apart from the motivation to combine ONO and the two secondary references. So if we win on the claim construction, we win. If we don't win on claim construction, but we win on the failure to combine, we still win. So we've got two chances here. Judge Welk, you talked about competing evidence. I don't think there is competing evidence. And let me tell you why. If you read the brief, for instance, as the board found, ONO does not state that its filter would be unsuitable for Spirinello's SCRZ-like catalyst. Of course, ONO doesn't say that. It doesn't know about Spirinello. And as observed by the board, ONO does not criticize or otherwise disparage the use of the SCR catalyst disclosed in Spirinello. And then, nor does Spirinello indicate that its catalyst could not be provided with a wall flow filter. And there's plenty of testimony, Your Honor, that we have about the fact that Spirinello and Schaefer-Sinlinger are dealing with a flow-through substrate which is much different and has much different considerations than wall flow filter. But then, Mr. McCann talked about this quote from Blakeman. And I know you were a litigator, Your Honor. This quote to me is just unbelievable. He says that a person of ordinary skill in the art would have understood ONO to at least indicate the filter disclosed therein could have been provided with that SCR catalyst, but without oxidation catalyst. And then he says, and then using a system downstream of an oxidation catalyst and ammonia injection. He's basically saying, and mind you, he is a Johnson Matthew employee. He's basically saying their invention is obvious. It's a total conclusionary statement. There's no basis to say, in the record, to say that ONO would do both at the same time. And there's no basis to say that ONO is going to move its oxidation over to downstream and do something completely different, i.e. do something which BASF did. Your Honor, this is the definition of hindsight. And when you have experts, experts from the company that's been accused of infringing, you've got to take that with a grain of salt. We submit a huge grain. We submit that the board didn't do that. The examiner in the 197 case got it right. And the board got it wrong. And if you dig into ONO even a little bit, you'll see that there's no reason and no reason that one would combine ONO with the SCR catalyst from Spirinello and Safer Summit. You can save your grain of salt argument for when it works in your favor. Thank you, Your Honor. I will do that. Okay. Thank both counsel. The case is taken under submission. And I was